J-E02002-17

2018 PA Super 30

| | | |
|---|---|---|
| IN RE: PETITION OF J.M.Y. | : | IN THE SUPERIOR COURT OF |
| ALLEGHENY COUNTY DEPARTMENT | : | PENNSYLVANIA |
| OF BEHAVIORAL HEALTH AND THE | : | |
| PENNSYLVANIA STATE POLICE | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.Y. | : | No. 1323 WDA 2015 |

Appeal from the Order March 10, 2015
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CC 1419 of 2014

BEFORE:   GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
          LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

OPINION BY SHOGAN, J.:                    FILED FEBRUARY 14, 2018

Appellant, J.M.Y., appeals from the order denying his petition to expunge his mental health records and restore his firearms rights.  Upon careful review, we vacate the order and remand for further proceedings.

We summarize the procedural history of this case as follows.  On September 21, 2012, Appellant was a student at the University of Pittsburgh when he attended a fraternity party and became intoxicated.  At the time, Appellant was taking prescribed medications for depression and anxiety.  On that date, Appellant was apprehended by University of Pittsburgh Police when it was reported that he was attempting to harm himself.  The police took Appellant to Western Psychiatric Hospital, where he was involuntarily committed under section 302 of the Mental Health Procedures Act ("MHPA") 50 P.S. §§ 7101-7503.  Subsequently, Appellant was discharged on

September 25, 2012.[1]  Appellant continued his course of studies in law enforcement at the University of Pittsburgh.

On November 24, 2014, Appellant filed a petition to vacate and expunge his involuntary commitment pursuant to 18 Pa.C.S. § 6105(f)(1)[2] and 18 Pa.C.S. § 6111.1(g)(2).[3]  A hearing was held on January 8, 2015, and on March 10, 2015, the trial court signed an order denying Appellant's petition for expungement.[4]  Appellant filed exceptions that were denied by operation of law, resulting in this timely appeal on August 27, 2015.[5]  The trial court did not order Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b).

_____

[1] We note that pursuant to 18 Pa.C.S. § 6105(c)(4), a person who has been involuntarily committed to a mental institution for inpatient care and treatment under sections 302, 303, or 304 of the MHPA is prohibited from possessing, using, controlling, selling, transferring, or manufacturing a firearm.  In addition, Appellant is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4).

[2] Under 18 Pa.C.S. § 6105(f)(1), the court of common pleas, upon application of a person subject to prohibition under section 6105(c)(4), "may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."

[3] Section 6111.1(g)(2) provides a means for expungement of records of section 302 involuntary commitment where the evidence was insufficient to justify such commitment.

[4] The order dated March 10, 2015, was not entered on the docket until August 26, 2015.  Record Docket Entry #7.

[5] On July 28, 2015, the trial court entered an order that restored Appellant's right to possess a firearm under state law.

- 2 -

On October 7, 2015, the trial court issued an opinion in support of its March 10, 2015 order.[6]

Previously, a divided three-judge panel of this Court affirmed the decision of the trial court. Appellant then filed an application for reargument en banc, which was granted on January 26, 2017, and the former memorandum decision of the three-judge panel was withdrawn.

Appellant presents the following issues for our review:

> I. Did the trial court err and/or abuse its discretion by finding that there was a valid commitment of the Appellant under Section 303 of the Mental Health Procedures Act, 50 P.S. §7303 (hereafter the ["MHPA"]) and by denying the Appellant's petition to vacate and expunge involuntary civil commitment?
>
> II. Did the trial court err and/or abuse its discretion by finding that there was sufficient evidence to support the Appellant's commitment under Section 302 of the Act and by denying the Appellant's petition to vacate and expunge involuntary civil commitment?

_____

[6] In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court concluded that Appellant was validly committed under section 303 and, thus, was barred from possessing a firearm under 18 Pa.C.S. § 6105(a)(1) and (c)(4). Trial Court Opinion, 10/7/15, at 1. The trial court stated, however, that it limited its review to the sufficiency of the evidence for the section 303 commitment. Id. at 2. In addition, the trial court noted the following:

> On July 28, 2015, an Order was filed in the matter restoring [A]ppellant's rights to possess a firearm under 18 Pa.C.S.A. § 6105(f)(1). Although this allows Appellant to again possess a firearm under Pennsylvania law, he is still barred from possessing a firearm under the federal Gun Control Act. 18 U.S.C.A. § 922(g)(4).

Trial Court Opinion, 10/7/15, at 1 n.1.

Appellant's Brief at 4. "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." In re Keyes, 83 A.3d 1016, 1022 (Pa. Super. 2013).

Appellant first argues that the trial court erred in concluding that there was a valid commitment under section 303 of the MHPA. Appellant's Brief at 12-19. Essentially, Appellant contends that his due process rights were violated, thereby invalidating the section 303 commitment. Id. at 18-19. Appellant claims there was no valid section 303 commitment at all. He states, "the 303 certification was merely a device for accomplishing the immediate release of [Appellant] from the 302 commitment while assuaging the liability concerns of UPMC and WPIC." Appellant's Brief at 19.[7] We are constrained to agree.

Initially, we observe that prevailing case law has interpreted 18 Pa.C.S. § 6111.1(g) as providing no opportunity to obtain expungement of a mental health record pursuant to a commitment under section 303 and only allows for a trial court to review commitments under section 302. In re Jacobs, 15 A.3d 509, 511 (Pa. Super. 2011). In addition, an appellant seeking

_____

[7] Appellant further observes that documentation reflects he did not attend a section 303 certification proceeding, and that "[h]e was never advised of any purported requirement that he engage in outpatient treatment, and there was never any follow-up by anyone regarding any such outpatient treatment." Appellant's Brief at 19. Although not raised as an issue, it is peculiar, if an oxymoron, that "outpatient treatment" can constitute "extended involuntary emergency treatment" under section 303.

expungement and restoration of firearms rights cannot "bootstrap" review of a section 303 commitment to a petition seeking review of a section 302 commitment under section 6111.1(g), because the section 303 commitment is "an entirely separate judicial proceeding, complete with its own avenue of appeal." Id.

The law in Pennsylvania is "well-settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." In re Hutchinson, 454 A.2d 1008, 1010 (Pa. 1982); In re Chiumento, 688 A.2d 217, 220 (Pa. Super. 1997). "The very nature of civil commitment . . . entails an extraordinary deprivation of liberty. . . . A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly construed, in order to avoid deprivations of liberty without due process of law." In re Woodside, 699 A.2d 1293, 1298 (Pa. Super. 1997) (quoting In Re S.C., 421 A.2d 853, 857 (Pa. Super. 1980)).

> The legislative policy reflected in the Mental Health Procedures Act is to require that strict conditions be satisfied before a court order for commitment shall be issued. . . . Such a policy is in accord with the recognition that commitment entails a massive deprivation of liberty. Collateral consequences, too, may result from the stigma of having been adjudged mentally ill. . . . Numerous restrictions and routines are imposed in a mental hospital . . . [and] are designed to aid and protect the mentally ill persons, even those already in custody for other reasons, who do not need such treatment should not be subjected to it. Indeed, a person who is mistakenly committed to a mental hospital might suffer serious psychological damage. For these reasons, strict adherence to the statutory requirements is to be compelled.

In re Ryan, 784 A.2d 803, 807 (Pa. Super. 2001) (quoting Commonwealth v. Hubert, 430 A.2d 1160, 1162 (Pa. 1981)) (emphasis added). As we ultimately held in In re Ryan, when an appellant's due process rights under the MHPA are violated, "we may vacate the certification for involuntary treatment pursuant to section []303, and direct that all records pertaining to this matter be expunged." In re Ryan, 784 A.2d at 808. See also In re A.J.N., 144 A.3d 130, 139 (Pa. Super. 2016) (stating that "case law uniformly mandates expungement and destruction of records when the procedural, due process requirements of the MPHA are violated during a commitment proceeding").[8] Thus, only a section 303 commitment that provides adequate due process may preclude an expungement of a section 302 commitment.

_____

[8] We observe that in In re A.J.N., 144 A.3d 130 (Pa. Super. 2016), this Court addressed a trial court's refusal to expunge two section 302 commitments. In that case, the appellant, who was a young man in his early twenties experiencing physical distress due to withdrawal from drug addiction, was involuntarily committed under section 302 in May of 2004, and then again in November of 2004. Id. at 132. Once free of his addiction, the appellant enlisted in the United States Army and excelled in his career. Id. Over nine years later, the appellant sought relief from the prohibition against carrying firearms due to his section 302 commitments, and he also sought the expungement and destruction of all records from the two involuntary commitments. Id. at 132-133. Although the trial court restored the appellant's right to possess a firearm, the trial court refused to expunge the two section 302 commitments. Id. at 133-134. On appeal, this Court concluded that the strictures of section 302 were ignored, when "[w]ithout personally viewing any behavior on [the a]ppellant's part that would support the belief that he was a danger to himself or others, police assumed control over [the a]ppellant's person and forcibly conveyed him to the mental health facility without a warrant." Id. at 137. Hence, we held that, under the

With these overriding concepts in mind, we observe the following. Section 302 of the MHPA provides for the involuntary emergency examination and treatment of a person not to exceed 120 hours if, upon certification of a physician for examination, or upon a warrant issued by a county administrator authorizing an examination, an examination conducted by a physician within two hours of arrival shows that the person is severely mentally disabled and in need of emergency treatment. 50 P.S. § 7302(a), (b). Section 303 of the MHPA provides for extended involuntary emergency treatment of any person who is being treated pursuant to section 302 for a period not to exceed twenty days if, after an informal conference where the patient is represented by counsel, a judge or mental health review officer finds that the patient is severely mentally disabled and in need of continued involuntary treatment, and so certifies. 50 P.S. § 7303(a)-(c). Indeed, the person is entitled to the appointment of counsel. 50 P.S. § 7303(b). In addition, section 303(c) requires the following:

> (1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or mental health review officer may review any relevant information even if

_____

applicable legal authority, the violation of the strictures of section 302 mandated that the records of the two civil commitments at issue be expunged and that all records of those commitments be destroyed. Id. at 139.

it would be normally excluded under rules of evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, he shall so certify. Otherwise, he shall direct that the facility director or his designee discharge the person.

50 P.S. § 7303(c)(1) (emphasis added).

Also of importance are the following provisions of the statute:

(d) CONTENTS OF CERTIFICATION. — A certification for extended involuntary treatment shall be made in writing upon a form adopted by the department and shall include:

(1) findings by the judge or mental health review officer as to the reasons that extended involuntary emergency treatment is necessary;

(2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing;

(3) any documents required by the provisions of section 302;

(4) the application as filed pursuant to section 303(a);

(5) a statement that the person is represented by counsel; and

(6) an explanation of the effect of the certification, the person's right to petition the court for release under subsection (g), and the continuing right to be represented by counsel.

(e) FILING AND SERVICE. — The certification shall be filed with the director of the facility and a copy served on the

person, such other parties as the person requested to be notified pursuant to section 302(c), and on counsel.

(f)  EFFECT OF CERTIFICATION. — Upon the filing and service of a certification for extended involuntary emergency treatment, the person may be given treatment in an approved facility for a period not to exceed 20 days.

(g)  PETITION TO COMMON PLEAS COURT. — In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification.  A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel.  The hearing shall include a review of the certification and such evidence as the court may receive or require.  If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition.  Otherwise, the person shall be discharged.

50 P.S. § 7303(d), (e), (f), (g) (emphases added).

Upon review of the certified record, we conclude that the certification was not proper and, therefore, the section 303 commitment was not valid.  At the expungement hearing, Appellant testified that, although he spoke with a public defender prior to his release from the hospital, he was unaware of any 303 commitment hearing held on September 25, 2012.  N.T., 1/8/15, at 32-33.  Appellant testified that he merely "was told that there could be a hearing."  Id. at 33 (emphasis added).

In addition, our review of the certified record reflects that, by happenstance, the public defender who signed Appellant's section 303 certification was present at the courthouse at the time of Appellant's expungement hearing and was asked to testify.  N.T., 1/8/15, at 15-20.  When

- 9 -

called into the courtroom, the public defender stated that he did not "specifically recall [Appellant]." Id. at 16. However, upon reviewing the section 303 commitment form at the time he provided his testimony, the public defender acknowledged that Appellant did not attend the 303 hearing. Id.

Also, Sergeant Andrew Redman of the University of Pittsburgh Police Department testified at Appellant's expungement hearing. Sergeant Redman explained that university police officers who file section 302 petitions typically receive notices of section 303 commitment hearings. N.T., 1/8/15, at 54. However, Sergeant Redman stated that he did not appear at a section 303 commitment hearing for Appellant on September 25, 2012, and could not recall whether he was ever informed that such a hearing for Appellant was to be held. N.T., 1/8/15, at 54-55.

In addition, the certified record reflects that the section 303 commitment certification document specifies that Appellant did not attend the hearing. The section 303 commitment certification provides as follows:

> AND NOW, this 25TH day of September, 2012, a hearing having been held on a Petition of Extended involuntary Treatment of [Appellant], Respondent, under Section 303 of the Mental Health Procedures Act of 1976, as amended by Act 324 of 1978, the Respondent having been present and represented by the Office of Public Defender, upon consideration of the testimony of F. DePietro, MD., a physician on the staff of WPIC, your Mental Health Review Officer finds that the Respondent is severely mentally disabled and presents a clear and present danger to himself/herself or others; and certifies that he/she shall receive:
> PLEASE CHECK ONE

In-Patient Treatment
Partial Hospitalization
Out-Patient Treatment [this box checked]
Combination of such treatment as the
director of the facility shall from time to
time determine.

which is the least restrictive appropriate treatment for the Respondent at <u>WPIC / Blair Co. MH</u> Hospital, pursuant to the provisions of the Mental Health Procedures Act, for a period not to exceed Twenty (20) days from the date of this Certification.

<u>      Robert Zunich      </u>
MENTAL HEALTH REVIEW OFFICER

Patient Attended YES ____ NO_<u>X</u>_

Contested _____

Uncontested: Voluntary _____

Stipulation __<u>X</u>_ _____<u>E.S.</u>_____
Patient's Counsel's signature required

[Patient is A Resident of BLAIR County]

Docket Entry 1, Exhibit 7 (emphasis added).

Appellant did not sign the section 303 commitment certification. Moreover, the section 303 commitment certification does not meet all of the requirements of section 303(d). Of particular importance is the fact that there is no evidence Appellant was ever notified of his right to appeal to the court of common pleas under section 303(g) as required under section 303(d)(6). Likewise, there is no evidence that Appellant was provided an explanation of his continuing right to be represented by counsel as required under section 303(d)(6). In addition, there is no evidence that Appellant was served a copy

of the section 303 commitment certification as mandated under section 303(e). These failures amount to a deprivation of Appellant's due process rights.

Moreover, a study of Appellant's discharge summary from Western Psychiatric Hospital is problematic. Precisely, the following language from the hospital's discharge document results in the conclusion that Appellant was not properly committed under section 303:

> HOSPITAL COURSE
> . . . He won his 303 hearing on 9/25/12 after police who petitioned his 302 did not show up to hearing.
>
> * * *
>
> DISCHARGE PLANNING
> [Appellant] discharged to home with his parents after winning his 303 hearing on 9/25/12 after police did not show up for his 303 hearing.

Docket Entry 1, Exhibit 8 (emphases added). Therefore, it is our determination that the trial court erred in finding that the section 303 certification was valid.

Appellant next argues that the trial court erred in determining that there was sufficient evidence to support his initial commitment under section 302 of the MHPA. Appellant's Brief at 20-22. Appellant contends that there was no evidence he suffered from mental illness or that he was severely mentally disabled as a result of mental illness. However, at the conclusion of his argument on this issue, Appellant states the following:

it is noteworthy that the trial court never addressed the sufficiency of the evidence to support the [s]ection 302 commitment. Rather, the lower court expressly stated that it was limiting its inquiry to the sufficiency of the evidence for the [s]ection 303 commitment, but then proceeded to address only the [s]ection 303 procedural requirements. Thus, the [trial] court failed to make any findings whatsoever as to the sufficiency of the evidence to support either the [s]ection 302 or [s]ection 303 commitments.

Appellant's Brief at 21-22.

Our review of the record reflects that, in his Petition to Vacate and Expunge Involuntary Civil Commitment filed on November 24, 2014, Appellant specifically challenged his section 302 commitment that occurred on September 21, 2012. In so doing, Appellant concluded his petition with the following request:

[Appellant] respectfully requests [the trial court] to Enter an Order vacating his mental health commitment of September 21, 2012, directing Allegheny County Mental Health/Mental Retardation, WPIC, Western Pennsylvania Hospital, Forbes Regional Campus, Pennsylvania State Police, as well as all other appropriate law enforcement agencies to expunge all references in their records, files and databanks to said commitment and restoring all of the civil rights and privileges lost by [Appellant] as a result of his commitment.

Petition to Vacate and Expunge Involuntary Civil Commitment, 11/24/14, at 9 (unnumbered).

However, as indicated by Appellant in his appellate brief, our review of the certified record reflects that the trial court failed to address whether there was sufficient evidence to support Appellant's section 302 commitment. Rather than address the underlying section 302 commitment, the trial court made a determination regarding the validity of Appellant's section 303

- 13 -

commitment. Trial Court Opinion, 10/7/15, at 3. Once the trial court deemed Appellant's section 303 commitment to be valid, it ceased its inquiry and never addressed Appellant's section 302 commitment. This poses a problem because this Court is not a fact-finding court. See Commonwealth v. Grant, 813 A.2d 726, 734 (Pa. 2002) (noting that appellate courts do not act as fact finders); Commonwealth v. Grundza, 819 A.2d 66, 68 (Pa. Super. 2003) (appellate court does not in first instance make findings of fact) (citation and quotation marks omitted). Because the trial court never addressed the validity of Appellant's section 302 commitment, we are compelled to remand this matter to the trial court for further proceedings.

In summary, because the certified record reflects that the dictates of the MHPA mandating a valid 303 certification were not met, we conclude that Appellant's due process rights were violated and fundamental fairness requires that his section 303 certification records be expunged. Accordingly, we vacate the certification for involuntary treatment pursuant to section 303, and we direct that those records be expunged. In re Ryan, 784 A.2d at 807. Once that is accomplished, the trial court is to hold a hearing addressing the expungement of Appellant's section 302 commitment.

Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

P.J. Gantman, P.J.E. Bender, Judge Bowes, Judge Lazarus, Judge Ott, Judge Stabile, and Judge Dubow join this Opinion.

Judge Olson files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/14/2018